## 28819. DAVIS *v.* TANK-CAR SERVICE STATIONS.

DECIDED JUNE 24, 1941. REHEARING DENIED JULY 25, 1941.

*Martin & Martin & Snow,* for plaintiff in error.

*J. H. Napier, Hall & Bloch,* contra.

BROYLES, C. J. Tank-Car Service Stations, a corporation, brought a suit against O. F. Davis on an open account, to recover $644.03 and interest thereon. The account was for gasoline sold by the plaintiff to the defendant. The defendant admitted buying the gas, and that under the terms of the oral contract between him and the plaintiff the amount sued for was due and unpaid; but he denied that he owed the plaintiff any money, for the following reasons: The agents of the plaintiff asked him to buy gas from them for his trucks, and told him they had two grades of gas, a high-test gas known as "Peppy Power" which sold for 21 cents a gallon, and a "regular" gas which sold for 17-1/2 cents a gallon. Said agents warranted that the Peppy Power gas was a high-test motor fuel, and stated that it was superior in quality to the regular gas, which they said was a third-rate gas. They told him that if he would buy all of his gas from them he could get the Peppy Power gas for 19 cents a gallon, and the regular gas at 16-1/2 cents a gallon. He accepted these terms, and, acting upon the warranty that the Peppy Power gas was a high-test motor fuel, he began buying that gas, and from the fall of 1936 to the fall of 1938 he bought approximately 50,000 gallons of said gas. The Peppy Power gas was orange-colored, and the regular gas was red in color. In September, 1938, he learned that the two gases were of the same grade, the only difference being in their color, and the color was obtained by

the plaintiff putting orange-colored powder in the tank containing the Peppy Power gas, and a red-colored powder in the tank containing the regular gas, the powders being put in the tanks secretly and at night. The gas sold him was not a high-test motor fuel, but was in fact of the same grade as the red colored gas which he could have bought for 16-1/2 cents per gallon, and the actual value of the gas sold him was 16-1/2 cents a gallon, but, because of his belief in the plaintiff's warranty, he paid 19 cents a gallon for it, and, instead of owing any money to the plaintiff, the plaintiff should return to him 2-1/2 cents a gallon on all the gas bought under the terms of the contract. He has overpaid the plaintiff in the amount of $1250, and after deducting the sum of $644.03 (the amount sued for by the plaintiff) the plaintiff is indebted to him in the sum of $605.97. He prayed judgment against the plaintiff for that amount. The defendant further alleged that immediately upon learning of the breach of said warranty he advised the plaintiff's manager that he had been defrauded by said breach, and that instead of owing the plaintiff any money the plaintiff was due him 2-1/2 cents a gallon on all gas bought under the terms of the contract. On the trial, after introduction of evidence for the defendant (the plaintiff introduced none), the judge directed a verdict in favor of the plaintiff in the amount sued for. The motion for new trial was overruled, and that judgment is assigned as error.

We agree to the following statement in the brief of counsel for the defendant in error: "With the admittance by the defendant of the indebtedness of $644.03 sued upon, the issue was defined clearly by the defendant's pleading as a breach of the plaintiff of its warranty that the gasoline was a high-test fuel. With that issue, and that issue only, clearly before the court, the case went to trial with the burden upon the defendant of proving that there was such a warranty, that he relied thereon, and that there was a breach thereof. For the sake of brevity it is conceded that the defendant's evidence showed such a warranty and his reliance thereon, leaving the only question before the court, to be determined by the evidence, that of the alleged breach by the plaintiff of its warranty that the gasoline was a high-test motor fuel." On that question, R. L. Greer Jr., a former station attendant for the plaintiff, testified for the defendant, as follows: "I worked for the Tank Service Stations . . about four or five years. . . As a matter of fact

there was no difference between the red gasoline and the orange-colored gas. . . As to whether to my own knowledge there was ever any gas sold out of the Peppy Power pump that was not what is called high-test or regular gas, it was 67-70 octane gas. It is regular gas; it is not a high test. 72 octane is supposed to be high test; it was 67. At that time 67-70 octane was regular or high-test gas. At all times when I was down at this station the gasoline known as Peppy Power was known as high-test gas. It was 67-70 octane; came out of the Peppy Power tank."

It will be observed that the above-quoted testimony is ambiguous, and that portions of it are contradictory to other portions. Certain parts of it would authorize a jury to find that the gas in question was not a high-test motor fuel, and other parts would authorize a finding that it was. Therefore we think that the question whether the gas sold to the defendant was a high-test motor fuel should have been submitted to the jury, leaving to them the right to believe or disbelieve certain parts of Greer's testimony, and to determine the truth of the matter. In *Wallis* v. *Watson*, 184 *Ga.* 38, 40 (190 S. E. 360), the court said: "Ordinarily, however, mere contradictions or ambiguities in the testimony of one who is *not a party to the case* do not require a rejection of his entire testimony, but the truth is to be determined by the jury." In *Reaves* v. *Columbus Electric &c. Co.*, 32 *Ga. App.* 140 (122 S. E. 824), headnote 3 is as follows: "'When a witness testifies to facts incoherently or inconsistently, that circumstance goes to his credit, and if his testimony be very incoherent or inconsistent, it should be considered with great caution' by the jury (*Evans* v. *Lipscomb*, 31 *Ga.* 71 (2), but this rule does not authorize the court to hold, as a matter of law, that the testimony of one not a party has no probative value merely because it is incoherent, inconsistent, or self-contradictory." Furthermore, the undisputed evidence in the instant case showed that the plaintiff had its employees to put orange-colored powder in the tank containing Peppy Power gas, and red-colored powder in the tank containing the regular gas, and that the employees were instructed by the agents of the plaintiff to do so secretly and at night. Jurors could well have asked themselves why this was done, if the Peppy Power gas was a high-test motor fuel. Certainly some of the evidence tended to show that the Peppy Power gas and the so-called "regular" gas were of the same grade,

512

and that neither was a high-test motor fuel. In our opinion the jury should have been allowed to pass on that question. The court erred in directing the verdict for the plaintiff.

*Judgment reversed. MacIntyre and Gardner, JJ., concur.*